IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SOBEIDA IRIZARRY-SANTIAGO,<br><br>**Petitioner,**<br><br>**v.**<br><br>ESSILOR INDUSTRIES, division of ESSILOR INTERNATIONAL; and FRANÇOIS DETERRE,<br><br>**Respondent.** | **Civil No.** 12-1098 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is the motion for a protective order and return of confidential documents filed by defendants Essilor Industries ("Essilor") and François Deterre ("Deterre"), (Docket 125). Having considered the arguments in defendants' motion; plaintiff Sobeida Irizarry-Santiago ("Irizarry")'s response, (Docket 131); and defendants' reply, (Docket 133), the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion for a protective order and return of confidential documents.

**I.  Background**

On November 9, 2012, defendants served plaintiff Irizarry with their first set of interrogatories and request for production of documents.  (Docket 39 at 1.)  After extensive quibbling between the parties regarding plaintiff's failure to respond to the discovery requests, the Court ordered plaintiff to provide her

Civil No. 12-1098 (FAB)                                                2

answers to the written discovery by April 15, 2013.  (Docket 40). Plaintiff failed to remit the discovery responses by that date, but she ultimately produced "a package of documents of about 200 pages, with no particular order, numbering, or identification" on April 15, 2013.  (Docket at 53.)  Defendants subsequently filed a motion for sanctions, (Docket 45), and sent plaintiff a letter requesting that she comply with the Court's order and "provide full responses" to their discovery requests.  (Docket 53 at 2.) Plaintiff sent defendants a "supplemented" response on April 18, 2013, which included an additional 200-250 pages of documents, again with no particular order, numbering, or identification. (Docket 53 at 2.)  Defendants claimed that plaintiff produced the documents in a "piecemeal" fashion, and they accused her of intentionally omitting or withholding documents.  Id.  They thus requested the immediate production of any missing documents.  Id. at 53.

On April 22, 2013, the Court ordered plaintiff to provide defendants with all pending discovery by April 23, 2013, or else "counsel will face extremely harsh monetary sanctions."  (Docket 50.)  The Court warned that "[p]laintiff's argument that the parties have yet to 'resolve' their discovery disputes is but an example of the absolutely intolerable, take-no-prisoners, scorched-earth arrogance exhibited by many current self-styled 'litigators.'"  Id.  Plaintiff filed a motion in compliance on

Civil No. 12-1098 (FAB)                                                3

April 23, 2013, indicating that the additional documents demanded by defendants "were found in another location, not previously searched[,] and these[,] among others found, will be provided today." (Docket 51 at 1.) She further stated that "plaintiffs will also produce additional documents found in this new location, that individually are not related to the claim, but that altogether allude to the claims presented . . . ." Id. at 2. It was not until May 13, 2013 that plaintiff produced 2,666 pages of documents to defendants. (Docket 62 at 3.)

In their motion for a protective order and return of confidential documents, defendants claim to be "surprised and disappointed to find a number of documents which are confidential and proprietary [sic] of Essilor Industries." (Docket 125 at 1.) They accuse plaintiff of "admitt[ing] to surreptitiously removing, without authorization, [nineteen] confidential and proprietary documents belonging to Essilor, for her own use and personal gain." Id. at 3. They further argue that:

> [p]laintiff's willful removal and disclosure of documents she knew to be confidential was done even though [p]laintiff acknowledges that the documents are unrelated to her case and she did not have authorization to use them. We must highlight the fact that some of the information in question pertains not only to Essilor's business practices and strategies, but also to individual third parties who are not parties to this case and have not consented to the disclosure of such sensitive data.

(Docket 125 at 6.) Ultimately, defendants seek a protective order (1) directing plaintiff to return the originals and all copies of

Civil No. 12-1098 (FAB)                                                 4

the confidential documents; (2) precluding plaintiff from further using, disclosing, or disseminating those documents; and (3) granting costs and attorneys' fees in favor of defendants for the time and resources expended in preparing their motion. (Docket 125 at 9.)

Plaintiff responds that as Essilor's Vice-President of Finance for the past 27 years, she "has been allowed to use and keep all kinds of documents not only at her office, but also at home, where she kept a second office and to which Essilor provided the equipment[,] such as: computer, printer, office materials, supplies and any other office need [p]laintiff had." (Docket 131 at 2-3.) She thus defends her possession of the documents as a proper, natural result of her professional functions and work projects authorized by Essilor. She denies that she obtained the documents through "theft and [with an] intention to defraud Essilor." Id. at 4. In her response, plaintiff informed the Court that Essilor has currently placed her on suspension with pay, and she suspects that defendants deliberately accuse her of fraud and theft in order to "attempt to justify" plaintiff's suspension. Id.

On July 31, 2013, the Court ordered defendants to reveal whether plaintiff indeed has been suspended with pay, and whether, during the course of her employment with Essilor, plaintiff was allowed to bring documents to her home to allow her to use and keep them for work purposes. (Docket 132.) In their reply, defendants

Civil No. 12-1098 (FAB)                                                5

admit that they have suspended plaintiff with full pay and benefits while they conduct an investigation regarding "possible violations of Company policy and the breach of her fiduciary duties as Vice President of Finance and Administration." (Docket 133 at 2.) They claim that the investigation has arisen because defendants were "horrified to learn during [p]laintiff's deposition that she has intentionally, systematically and surreptitiously copied, removed and otherwise kept confidential and proprietary documents belonging to Essilor for her own personal use." Id. at 2. Defendants "vehemently dispute" plaintiff's allegation that she was permitted to use and keep documents in her home, id. at 4, and they deny that she kept a second office at her home related to her employment with Essilor. Id. at 6. They represent to the Court that the suspension "carries no consequences and has no effect on [p]laintiff's continued employment," and that the investigation "is a matter related strictly to the employer-employee relationship, and as such is separate from the discovery issue squarely before the Court." Id. at 3.

**II. Discussion**

Pursuant to Rule 26(c), the Court may issue a protective order upon motion by "[a] party or any person from whom discovery is

Civil No. 12-1098 (FAB)                                                   6

sought[1] . . . [accompanied by] a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Caballero v. Hosp. Español Auxilio Mutuo de P.R., Inc., 2010 U.S. Dist. LEXIS 10601 (D.P.R. Feb. 8, 2010) (Arenas, J.) (quoting Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990) and Seattle Times v. Rhinehart, 467 U.S. 20, 36 (1984)); See also Conti v. Am. Axle & Mfg., 326 Fed. Appx. 900, 903-04 (6th Cir. 2009) ("[T]he decision to issue a protective order is left to the broad discretion of the district court in managing the case.") (internal quotations and citation omitted). In order to justify a protective order limiting a party's right to disseminate discovery documents, a party must make a showing of good cause, which "must be based on a particular factual demonstration of potential harm, not on conclusory statements." Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986). "It is implicit in Rule 26(c)'s 'good cause' requirement

---

[1] The Court notes plaintiff's argument that in this case, defendants have *already received* the discovery documents from plaintiff.  Defendants seek a protective order, therefore, in order to prevent further dissemination or exposure of the confidential documents.  That type of order is commonly referred to as a confidentiality order.  See Pagan-Colon v. Walgreens of San Patricio, Inc., 264 F.R.D. 25, 30 (D.P.R. Feb. 24, 2010) (Arenas, J.).

Civil No. 12-1098 (FAB)                                                7

that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public."  Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 790 (1st Cir. 1988). Restrictions on the right to disseminate information obtained in discovery are appropriate, therefore, if it is shown that the restrictions are necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" including, but not limited to, true trade secrets, confidential research, and development and commercial information.  Fed. R. Civ. P. 26(c).

The Court finds that the nineteen documents[2] included in plaintiff's 2,666-page production response are protected by Essilor's confidentiality policy.  Because the documents contain "business strategies, cost saving measures, operational trends, pricing, parts, item costs, purchasing, vendor information, confidential personnel data, litigation strategies, budget information, and sales volume," (Docket 133 at 8), their disclosure will cause a clearly defined and serious injury to defendants' business.  Having established sufficient "good cause," Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986), defendants are entitled to a protective confidentiality order over the nineteen documents listed in defendants' motion.  (See Docket 125 at 3-5.) Defendants' motion for a protective order, therefore, is **GRANTED IN**

---

[2] The exact documents are identified as "a" through "s" in defendants' motion for a protective order, (Docket 125 at 3-5).

Civil No. 12-1098 (FAB)                                                  8

**PART**. Plaintiff is prohibited from disclosing or disseminating those documents to anyone other than Essilor or her attorneys, and the parties are **ORDERED** to provide the Court with a stipulated protective confidentiality order by September 6, 2013.

Because the parties take opposite views as to two key issues, however, the Court cannot determine at this time whether plaintiff (1) should be precluded from further using any of the nineteen documents in this litigation, or (2) should turn over all copies of the documents back to Essilor.  First, the parties dispute the relevance of the nineteen documents to the lawsuit.  Defendants argue that "[t]he documents in question are marginally relevant to [p]laintiff's case (at best)."  (Docket 125 at 5.) Plaintiff's deposition indicates that she believes certain individual documents are not relevant; but plaintiff has also informed the Court of her position that "altogether, [the documents] allude to the claims presented."  (Docket 51 at 2.)   The scope of discovery "is traditionally quite broad," Lewis v. ACB Bus. Servs., 135 F.3d 389, 402 (6th Cir. 1998), and "Fed. R. Civ. P. 26(b)(1) generally permits liberal discovery of relevant information." Anderson, 805 F.2d at 6-7.  As the Supreme Court has instructed, the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

Civil No. 12-1098 (FAB)                                                 9

Defendants are free to challenge the admissibility of the documents through a pretrial motion *in limine,* Potomac Elec. Power Co. v. Elec. Motor Supply, Inc., 190 F.R.D. 372, 381 (D. Md. 1999), but at the discovery stage the Court declines to determine the potential relevance of the nineteen documents.  Accordingly, defendants' request to altogether preclude plaintiff's use of the documents at this time in the litigation is **DENIED.**

Second, the parties do not agree on whether the documents were rightfully in plaintiff's possession.  Defendants point to Essilor's Non-Disclosure, Fraud, and Release of Employee Information policies to argue that plaintiff did not have authorization to remove the nineteen documents in question. Plaintiff's deposition, on the other hand, establishes that the "Head of Finance" position at Essilor entails the handling of confidential information and that plaintiff was authorized to keep documents in her "home office" in order to work on projects for Essilor, both of which support the conclusion that plaintiff's possession of the nineteen documents falls well within the scope of her employment.  At this stage, the Court cannot determine whether — as defendant argues — plaintiff impermissibly and deliberately gathered, compiled and stored the confidential documents "for her own use and personal gain," or whether — as plaintiff contends — she rightly possessed those documents at a home office due to her 27-year tenure as vice-president of finance.  The Court declines to

Civil No. 12-1098 (FAB)                                          10

issue an order deciding the precise matter that defendants claim to be "investigating" at Essilor: whether plaintiff violated company policy in possessing the documents she produced.  Accordingly, the Court **DENIES** defendants' request for the return of confidential

Civil No. 12-1098 (FAB)                                              11

documents at this time.[3]

---

[3] The parties also dispute the propriety of, and motive behind, plaintiff's production response. Plaintiff appears to have understood that the nineteen documents produced were confidential under Essilor's policies. Nonetheless, and despite believing that some were not relevant, she admits to having gathered and produced them to her attorneys. Indeed, on April 23, 2013, she indicated to the Court that she would be producing "additional documents found in [a] new location, that individually are not related to the claim, but that altogether allude to the claims presented . . . ." (Docket 51 at 2.) Evidence suggests, however, that plaintiff included the nineteen documents in her production response not out of a motive to break confidentiality, but rather out of a belief that she had been ordered to turn over all Essilor documents in her possession. Defendants' request for production no. 14 is a catch-all request for documents, directing plaintiff to produce, "[a]ny other documents in your possession or under your control which may be reasonably related to the facts alleged in the Complaint, **or which may lead to discoverable information, regardless of whether you intend to use them at trial.**" (Docket 131-1 at 5) (emphasis added). Plaintiff's deposition testimony also indicates that she interpreted the Court's order to mean that she was obligated to produce every single document in her possession, regardless of its potential relevance. (Docket 51 at 1.) Finally, the fact that the 2,666 documents were produced to defendants "with no particular order, numbering, or identification" suggests that plaintiff merely handed over all Essilor documents that happened to be contained in her home office at that time.

The Court declines to weigh evidence as to the issues of plaintiff's right to possess, or her motive behind, producing the nineteen documents. Those issues more appropriately pertain to a Title VII claim that an employer retaliated against an employee "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Harris v. Richland Cmty. Health Care Ass'n., 2009 U.S. Dist. LEXIS 83824, 10 (D.S.C. July 15, 2009) (quoting 42 U.S.C. § 2000e-3(a)); see also Armstrong v. Whirlpool Corp., 363 Fed. Appx. 317, 331 (6th Cir. 2010) ("[A]n individual's delivery of relevant documents during the discovery process . . . clearly falls within the ambit of participating 'in any manner' in a Title VII proceeding.") (internal quotations and citation omitted). Because plaintiff has not amended her complaint to allege that her current suspension with pay violates Title VII's participation clause, the Court need not evaluate those issues at this time.

Civil No. 12-1098 (FAB)                                                     12

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** defendants' motion for a protective order and return of confidential documents.  Defendants are entitled to a protective confidentiality order as to the nineteen documents referenced in Docket 125 at pages 3-5.  Plaintiff is prohibited from disclosing or disseminating those documents to anyone outside of Essilor or her attorneys, and the parties are **ORDERED** to provide the Court with a stipulated protective confidentiality order by **September 6, 2013**.  The Court **DENIES** defendant's requests that plaintiff: (1) return the confidential documents to Essilor, and (2) be precluded from further using any of the nineteen documents in this litigation.  Both parties' requests for attorneys fees are **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 28, 2013.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE