IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SOBEIDA IRIZARRY-SANTIAGO,

**Petitioner,**

**v.**                              Civil No. 12-1098 (FAB)

ESSILOR INDUSTRIES, division of
ESSILOR INTERNATIONAL; and
FRANCOIS DETERRE,

**Respondent.**

MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is the motion for summary judgment filed by defendants Essilor Industries ("Essilor") and Francois Deterre ("Deterre"), (Docket 142). Having considered the arguments in defendants' motion; plaintiff Sobeida Irizarry-Santiago ("Irizarry")'s response, (Docket 147); and defendants' reply, (Docket 154), the Court **GRANTS** defendants' motion for summary judgment.

I. **Summary Judgment Standard**

Summary judgment serves to assess the evidence and determine if there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" if it has the potential to "affect the outcome of the

suit under the governing law." Id.  A dispute is "genuine" when it "could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994).  It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion.  Id. (citing Fed.R.Civ.P. 56(c)).  Once a properly supported motion has been presented, the burden shifts to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).

It is well-settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "[A] party opposing summary judgment[, therefore,] must 'present definite, competent evidence to rebut the motion.'" Maldonado-Denis, 23 F.3d at 581 (internal citation omitted).  In making this assessment, the Court must take the entire record in the light most favorable to the nonmoving party

and draw all reasonable inferences in its favor. <u>Farmers Ins.</u>
<u>Exch. v. RNK, Inc.</u>, 632 F.3d 777, 779-80 (1st Cir. 2011).

## II.  **ADEA and Title VII Discrimination Claims**

Defendants seek summary judgment of plaintiff's ADEA age
discrimination claim and her Title VII sex and national origin
discrimination claims.  When, as here, the employee offers no
"smoking gun" direct evidence of discrimination in those types of
cases, a three-step burden-shifting framework applies. <u>See, e.g.</u>,
<u>Velazquez-Fernandez v. NCE Foods, Inc.</u>, 476 F.3d 6, 11 (1st Cir.
2007) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792,
802-05 (1973)).  To defeat summary judgment of an ADEA age
discrimination claim, the employee must first show: (1) that he or
she was at least forty years old when the adverse employment action
was taken against him or her; (2) that his or her job performance
met the employer's legitimate expectations; (3) that he or she
suffered an adverse employment action; and (4) that the employer
filled the position, thereby showing a continuing need for the
services that he or she had been rendering. <u>Melendez v.</u>
<u>Autogermana, Inc.</u>, 622 F.3d 46, 50 (1st Cir. 2010).  In a Title VII
sex or national origin discrimination claim, a plaintiff has the
initial burden of establishing: (1) that he or she is a member of
a protected class; 2) that an adverse employment action was taken;
(3) that he or she was otherwise qualified; and 4) that his or her
position remained open or was filled by a person with similar

Civil No. 12-1098 (FAB)                                                4

qualifications.  García v. Bristol-Myers Squibb Co., 535 F.3d 23,
34 n.2 (1st Cir. 2008).

    Once established, the *prima facie* showing "gives rise to a
rebuttable presumption that the employer engaged in intentional []
discrimination."  Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091
(1st Cir. 1995) (citations omitted).  The burden of production then
shifts to the employer "to produce sufficient competent evidence to
allow  a  rational  fact-finder  to  conclude  that  a  legitimate
non-discriminatory  reason  existed  for  the  [adverse  employment
action]."  Melendez, 622 F.3d at 50.  If the employer meets its
burden, the employee must then prove that the proffered reason is
pretextual, and that "the record evidence would permit a reasonable
jury to infer that the real reason was discriminatory animus" based
on an impermissible consideration.  Id. (internal quotations and
citation omitted).

    Defendants first argue that plaintiff fails to meet her *prima
facie* burden on each discrimination claim.  They also contend that
even if *prima facie* cases could be met, plaintiff's claims cannot
survive  because  she  has  not  provided  sufficient  evidence
demonstrating that defendants' proffered explanation is pretext and
that a motivating factor for her termination was a discriminatory
animus.  The Court addresses each argument in turn.

### A.   *Prima Facie* Case

The Court assumes that plaintiff's *prima facie* burden has been met "in order to move on to the real issues in the case." Garcia, 535 F.3d at 31 (citing Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996) ("On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus."); see also Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31, 35 (1st Cir. 2012) ("We bypass whether [plaintiff] established a *prima facie* case of discrimination."). It first engages defendants' argument, however, that as a matter of law, none of the actions allegedly taken against plaintiff amounts to an "adverse employment action" under the ADEA and Title VII.  (Docket 142 at p. 11.)

To constitute an adverse employment action, an employer's action must materially change the conditions of the plaintiff's employment.  Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002).  Material changes include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Id. (quoting Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)).  The First Circuit Court of

Appeals has explicitly indicated that "if an employee suddenly finds herself with dramatically decreased supervisory authority and without a voice in major decisions, this could constitute an adverse employment action." Gu, 312 F.3d at 14.  Plaintiff alleges in her complaint that defendants: (1) removed her from "important Company processes, such as budget, performance bonus reserves, salary increases, failing even to copy her on communications related to these matters, or to require other participants to keep her informed on such matters"; (2) assigned budget functions previously performed by plaintiff "to a significantly younger employee" and chose that employee to attend critical company meetings in plaintiff's place; (3) prevented plaintiff from attending "important company meetings" both in and outside of Puerto Rico; (4) eliminated plaintiff's use of a company vehicle and related expenses; (5) changed her job description to permit temporary assignments; and (6) removed employees from her supervision.  (See Docket 1.)

        Plaintiff's allegation that defendants excluded her — Essilor's Vice President of Finance and Administrative Manager — from important company processes and meetings regarding financial matters would certainly qualify as an adverse employment action. See Gu, 312 F.3d at 14 (finding a company's most senior employees' loss of supervisory authority, exclusion from office meetings, and diminished communications regarding office matters to be adverse

employment actions).  The Court cannot conclude that defendants'
other alleged actions rise to the level of adverse employment
actions, however, because plaintiff has not demonstrated that they
materially changed her employment conditions.  Federal courts
repeatedly hold that an adverse employment action must affect more
than *de minimis* aspects of an employee's work, or trivial,
subjectively perceived inconveniences.  See Cham v. Station
Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012) ("An adverse
employment action typically involves discrete changes in the terms
of employment, such as hiring, firing, failing to promote,
reassignment with significantly different responsibilities, or a
decision causing significant change in benefits.") (internal
quotations and citations omitted); Blackie v. Maine, 75 F.3d 716,
725 (1st Cir. 1996) ("Work places are rarely idyllic retreats, and
the mere fact that an employee is displeased by an employer's act
or omission does not elevate that act or omission to the level of
a materially adverse employment action."); Bowman v. Shawnee State
Univ., 220 F.3d 456, 462 (6th Cir. 2000) ("*[D]e minimis* employment
actions are not materially adverse and, thus, not actionable.");
Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005), quoting
Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (defining
adverse employment action as "one which is more disruptive than a
mere inconvenience").  Here, plaintiff has not provided the Court
with even a scintilla of evidence, argument, or authority

demonstrating that any of the remaining alleged conduct —
eliminating the company car privilege, delegating temporary
assignments to plaintiff, assigning some of plaintiff's tasks to
another employee, or downsizing plaintiff's human resources —
materially changed her employment conditions.  They thus do not
constitute adverse employment actions for purposes of plaintiff's
ADEA and Title VII claims.[1]

**B.   Pretext and Discrimination**

Assuming plaintiff can establish a *prima facie* case of
ADEA age discrimination and Title VII sex and/or national origin
discrimination, her claims do not survive because she fails to show
that defendants' non-discriminatory reasons for their employment

---

[1] Defendants recently revealed that plaintiff no longer works
for Essilor.  Although they claim that plaintiff "refused to return
to work after being reinstated from a paid leave due to an internal
investigation on August 22, 2013 and/or comply with the terms of
her reinstatement," (Docket 141 at p. 1. n.1), plaintiff claims
that Essilor "terminated [her] employment [o]n September 11, 2013."
(Docket 148-9 at p. 1.)  As the First Circuit Court of Appeals has
recognized, "termination of employment obviously is an adverse
employment action . . . ." Valle-Arce v. P.R. Ports Auth., 651
F.3d 190, 198 (1st Cir.2011).  The Court would have recognized
plaintiff's alleged September 2013 termination and surrounding
circumstances as an adverse employment action, but quizzically,
plaintiff directs the Court to disregard those actions because they
"are not [the] object [of] and has [sic] not been brought up the by
the Plaintiff in this case."   (Docket 147-1 at p. 2) ("Any
statement made by Defendants included in Footnote 1, regarding
actions that occurred after the filing of the Complaint are not
[the] object [of] and ha[ve] not been brought up by the Plaintiff
in this case.  Therefore, the allusions and commentaries made by
the Defendants regarding these events should be striken [sic].").
Accordingly, plaintiff's dismissal is not at issue and will not
serve as an adverse employment action in this lawsuit.

decisions were but a pretext for discrimination.  Defendants claim
that Mr. Deterre "amended and adjusted" plaintiff's duties because
of sound business reasons related to cost saving and efficiency.
(Docket 154 at p. 21) ("Mr. Deterre's interest in creating a more
integrated operation and streamlining the interaction between
Essilor's Purchasing and Logistics Departments, by consolidating
them under the umbrella of Mrs. Irizarry's responsibilities as
Vice-President of Finance and Administration in order to optimize
performance and productivity and obtain cost-reduction.")   "No
matter how medieval a firm's practices, no matter how high-handed
its decisional process, no matter how mistaken the firm's
managers," Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir.
2002), the Court may not act as "a super-personnel department that
reexamines an entity's business decisions."  Espinal, 693 F.3d at
35 (citation omitted).  As the First Circuit Court of Appeals has
explained:

> while an employer's judgment or course of action may seem
> poor or erroneous to outsiders, the relevant question is
> simply whether the given reason was a pretext for
> discrimination.  It is not enough for the plaintiff to
> show that the employer made an unwise business decision,
> or an unnecessary personnel move.  Nor is it enough to
> show that the employer acted arbitrarily or with ill
> will.  These facts, even if demonstrated, do not
> necessarily show that [the employee's age or sex or
> national origin] was a motivating factor.

Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 255 (1st Cir.
1986) (internal quotations and citation omitted).  Plaintiff must
demonstrate, therefore, that the record evidence would permit a

reasonable jury to infer that defendants' explanation is pretext and that the true reason for defendants' actions was discrimination. <u>Melendez</u>, 622 F.3d at 50.

Plaintiff completely disregards the burden-shifting framework in her opposition, claiming that "[i]t does not merit to discuss the legal doctrine regarding the causes of actions included in the Complaint, [because defendants'] motion do[es] not present a single fact from which one single reasonable conclusion can be reached in a verdict in favor of Defendant." (Docket 147 at p. 5.) She defends against summary judgment only by stating, without identifying any supportive facts or applying the evidence, that plaintiff's deposition and unsworn statement "clearly establish a pattern of harassment and discrimination" under Title VII and the ADEA. (Docket 147 at p. 5.) Faced with plaintiff's decision not to defend her claims against defendants' motion, the Court conducts an independent review of the record, including plaintiff's statements of uncontested facts and supporting citations,[2] and finds that no competent evidence exists to prove that defendants were animated by age, sex, or national origin discrimination.

_____

[2] Pursuant to Fed. R. Civ. P. 56(e), a district court may grant summary judgment only if summary judgment is "appropriate." The First Circuit Court of Appeals has further concluded that, even in the absence of a response by the opposing party, the district court "must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact." <u>Jaroma v. Massey</u>, 873 F.2d 17, 20 (1st Cir. 1989).

Plaintiff's allegation that a "pattern of harassment and discrimination" existed against her at Essilor is belied by the record.    The only evidence plaintiff submits referring to defendants' actions allegedly taken against her — plaintiff's unsworn statement — lacks specificity and detail as to the actions themselves as well as the reasons behind them.  (See Docket 148-9.) Plaintiff's unsworn statement does nothing more than cite perceived inequities and tack on the self-serving conclusion that the defendants were motivated by a discriminatory animus.  The same is true of the excerpts of plaintiff's deposition cited by defendants.[3]  The First Circuit Court of Appeals has firmly stated that "a court is not obliged to accept as true or to deem as a disputed material fact each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party." Garcia, 535 F.3d at 34 n.5 (internal quotation and citation omitted).   Statements made in response to a motion for summary judgment that are not otherwise supported by the record and that

_____

[3] Plaintiff alleges that defendant Deterre called her "disagreeable" in 2010 and 2011, (Docket 141-3 at p. 21); that he told her in 2010 that another female employee was "faster and more agile" than plaintiff, (Docket 141-3 at pp. 33 & 76); and that he commented that plaintiff would not be needed anymore at Essilor, (Docket 141-4 at p. 5).  The Court finds those stray remarks to be "an inadequate foundation for the requisite discriminatory intent." See Gonzalez, 304 F.3d at 69.   Furthermore, plaintiff later admitted that it is merely *her perception* that the younger employee was sent instead of plaintiff because of her age, and that females at Essilor need to work harder to prove that they deserve the position of manager.  (Docket 141-4 at pp. 18, 33–34, 39–40.)

"assert[] what amount[s] to nothing more than self-serving, factually-devoid declaration[s]," need not be considered by the Court. Torrech-Hernandez v. GE, 519 F.3d 41, 47 (1st Cir. 2008); see also Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) (statements contained in an affidavit must be "supported with particularized factual information"). Standing alone, therefore, plaintiff's unsworn statement and deposition testimony do not constitute sufficient definite, competent evidence to rebut defendants' motion. See Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215 (1st Cir. 2008); Maldonado-Denis, 23 F.3d at 581. Because plaintiff has failed to "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: [age, national origin, and/or sex] discrimination," summary judgment is appropriate. See Melendez, 622 F.3d at 52 (internal quotations and citation omitted). Accordingly, plaintiff's ADEA age discrimination claim and Title VII sex and national origin claims are **DISMISSED WITH PREJUDICE.**

## III. Title VII Retaliation Claim

Defendants also seek summary judgment of plaintiff's Title VII retaliation claim. To prove a claim for retaliation, a plaintiff must show: (1) that he or she engaged in protected conduct; (2) that he or she was subjected to an adverse employment action; and (3) that there was a causal connection between the first and second

elements. <u>Valentin-Almeyda v. Municipality of Aguadilla</u>, 447 F.3d
85, 94 (1st Cir. 2006).  Neither party disputes that plaintiff did
indeed engage in protected conduct by submitting an EEOC
administrative charge in August 2011.  As discussed above, the
Court finds that plaintiff's exclusion from important company
processes and meetings regarding financial matters qualifies as an
adverse employment action under the second *prima facie* prong.[4]
Plaintiff's retaliation claim fails, however, because she falls

---

[4] In the Title VII retaliation context, an adverse employment
action need not affect the terms or conditions of employment, but
must be the type of action that would discourage a reasonable
employee from engaging in protected activity.  <u>Burlington N. &
Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 62-63 (2006).  Plaintiff
has failed to advance sufficient evidence or present any argument
whatsoever from which the Court can conclude that defendants' other
alleged actions — eliminating the company car privilege, delegating
temporary assignments to plaintiff, assigning some of plaintiff's
tasks to another employee, or downsizing plaintiff's human
resources — would deter a reasonable employee from participating in
protected activity.  Accordingly, they do not qualify as adverse
employment actions for purposes of plaintiff's Title VII
retaliation claim.

In <u>Gu</u>, the First Circuit Court of Appeals explained that
material changes do include "unwarranted negative job evaluations."
312 F.3d at 14 (quoting <u>Hernandez-Torres v. Intercontinental
Trading, Inc.</u>, 158 F.3d 43, 47 (1st Cir. 1998).  Although
plaintiff reports  having received negative job evaluations after
filing her EEOC complaint in August 2011, the Court can find no
evidence of objectively negative reviews.  Plaintiff's year-end
reviews from 2008 to 2012 consistently document Ms. Irizarry's
accomplishments and merely suggest that her "personal and
interpersonal" skills be improved. (Docket 141-11.)  Her 2011 and
2012 year-end reviews do comment that plaintiff's attitude had
changed and affected the relationship with coworkers and the
overall work environment, but they also explain that she "globally
exceeded" expectations, showed key determination in her job
performance, and did "a very good job to reach her main technical
objectives."  <u>Id.</u> at pp. 40 & 59.

short of establishing a causal connection between those adverse employment actions and her EEOC submission.

Plaintiff has put forth no evidence — either direct or circumstantial — demonstrating retaliation.  She has not offered evidence showing that her exclusion from meetings or company processes, for example, occurred within any significant temporal proximity of her August 2011 EEOC filing.  See Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994) (per curiam) (holding that a plaintiff may demonstrate causation "by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action.").  Even if the Court were to consider her unsworn statement, which purports to include 28 paragraphs of "examples" of defendants' discriminatory and retaliatory actions, the Court notes that the statement contains no specific dates, and is devoid of details demonstrating that any of the alleged actions even occurred after, much less in response to, the August 2011 EEOC filing.[5]  (See Docket 148-9 at pp. 6-14.)  The same is true of the deposition testimony offered by defendants. (See Docket 141-4 at pp. 62-76.)  As such, they receive no weight. See Perez, 247 F.3d at 316 ("Affidavits purporting to describe meetings or conversations need not spell out every detail, but to

---

[5] To the contrary, plaintiff alleges that "shortly after Mr. Deterre became the General Manager" in 2008, he began removing her from important company processes, (Docket 1 at p. 6), and that her duties began to change around March 2010, (Docket 141-3 at p. 48).

receive weight at the summary judgment stage they must meet certain rudiments. Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e), even when proffered in affidavit form by one who claims to have been a participant."). Furthermore, no evidence establishes that defendants made comments intimating a retaliatory mindset, Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991), or otherwise engaged in a "pattern of antagonism" after plaintiff's protected conduct.  Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).  In short, no evidence exists from which the Court or a reasonable jury would be able to infer that defendants acted in retaliation of plaintiff's EEOC submission.  Accordingly, plaintiff has failed to establish a *prima facie* case of Title VII retaliation, and her claim is **DISMISSED WITH PREJUDICE.**

## IV.  Commonwealth Law 100 and Law 115 Claims

Plaintiff's Commonwealth claims for discrimination pursuant to Law 100 are virtually identical to her Title VII and ADEA claims. Similarly, her retaliation claim pursuant to Law 115 mirrors her Title VII retaliation claim.  Thus, the success of plaintiff's Commonwealth claims hinges on the success of her Title VII and ADEA claims.  Because her ADEA and Title VII claims fail to survive summary judgment, the Court also concludes that no reasonable jury would be able to find for plaintiff on the Commonwealth claims for

the same reasons.  Accordingly, defendants' motion for summary
judgment on plaintiff's Commonwealth claims pursuant to Law 100 and
Law 115 is **GRANTED.** Those claims are **DISMISSED WITH PREJUDICE.**

## V.   Article 1802 Claim

Plaintiff seeks damages pursuant to article 1802, Puerto
Rico's general tort statute providing that a person who "causes
damages to another through fault or negligence" shall be liable in
damages.  P.R. Laws Ann. tit. 31, § 5141.  Several courts within
the District of Puerto Rico have explained that the provisions of
the Puerto Rico Civil Code are supplementary to special legislation
like Title VII, and that a special law prevails over a general law
like article 1802.  See, e.g., Medina v. Adecco, 561 F. Supp. 2d
162, 175 (D.P.R. 2008) (Gelpi, J.); Denis Rosario v. McConnell
Valdes, 2008 U.S. Dist. LEXIS 13113, at *3-6 (D.P.R. Feb. 21, 2008)
(Cerezo, J.).  The Puerto Rico Supreme Court has explicitly
addressed the interplay between causes of action arising under
article 1802 and special employment statutes.  See Santini Rivera
v. Serv Air, Inc., 137 D.P.R. 1, 1994 Juris P.R. 121 P.R.-Eng.
909,527 (1994).  Because the Puerto Rico Supreme Court has
clarified that "[a]s a general rule, in the face of conduct by an
employer that has been typified and penalized by special labor
legislation, the employee only has recourse to the relief of said
Act, and is barred from seeking additional compensation under
[article 1802]," Santini Rivera, 137 D.P.R at 16 (Hernandez-Denton,

C.J., concurring), the Court **DISMISSES WITH PREJUDICE** plaintiff's article 1802 claim.

## VI. Breach of Contract

Plaintiff claims that defendants breached her employment contract by discontinuing the use of her company car privilege and failing to provide her a year over year salary increase of 10% throughout her employment with Essilor. (Docket 1 at p. 22.) In Puerto Rico, "[t]o properly assert a claim for breach of contract, a party must sufficiently allege (1) a valid contract, (2) a breach of that contract, and (3) resulting damages." First Med. Health Plan, Inc. v. CaremarkPCS Caribbean, Inc., 681 F.Supp.2d 111, 116 (D.P.R. 2010). First, the parties agree that a valid "employment agreement" existed between plaintiff and Essilor. Plaintiff submitted a copy of the original agreement, signed in 1986, demonstrating that her compensation would include a company car and annual salary revision of approximately 10%. (Docket 148-1.) Defendants submit an unsworn statement under penalty of perjury by Mr. Carlos Martinez — a manager of human resources at Essilor — confirming that when plaintiff began her employment, she had a

company car privilege and an annual salary revision of "approximately" 10%.[6]   (Docket 141-2 at p. 2.)

Second, evidence suggests that defendants did not comply with the car privilege provision of the 1986 employment agreement: defendants admit that they discontinued the use of plaintiff's company car on August 7, 2011. (Docket 142 at p. 38; Docket 141-12.) There is no evidence, however, to support plaintiff's contention that she did not receive annual salary increases of "approximately" 10%. Plaintiff testified in her deposition that during the course of her employment, she "never" received a 10% increase in her salary. (Docket 148-4 at p. 21.) She does not support her claim with either facts or argument, however, and thus does not demonstrate that any of the yearly salary increases that she did accept in her 20+ years of employment with Essilor were not "approximately" 10%. Id. at pp. 21-23. In short, the Court cannot glean from the record any number or percentage demonstrating what her annual salary increases actually were. Given that the purpose of summary judgment is to "pierce the pleadings" and to determine whether there is a genuine need for trial, plaintiff's failure to

---

[6] Neither party submits any additional evidence fleshing out the terms of the company car and annual salary revision provisions. Plaintiff alleges that her agreement from 1986 had never been modified, (Docket 148-9 at p. 2), but Mr. Martinez states that "[o]ver the years, [p]laintiff's compensation and benefits package was modified and amended on numerous occasions." (Docket 141-2 at p. 2.) Because defendants fail to offer evidence of those alleged modifications and amendments, however, the Court deems the 1986 agreement to be controlling.

come forward with competent evidence to rebut the moving party's assertions is fatal to her claim.  Evans Cabinet Corp. v. Kitchen Int'l., Inc., 593 F.3d 135, 140 (1st Cir. 2010).  To defeat defendants' motion for summary judgment, plaintiff needed to do more than rest upon the mere allegations in her pleadings. Garside, 895 F.2d at 49.  She has failed to do so with regard to her breach of contract claim for annual salary increases of approximately 10%.  Because plaintiff's argument is woefully undeveloped and is not supported by reference to either legal authority or evidence in the record, that claim is **DISMISSED WITH PREJUDICE**.  See Cruz v. Bristol-Myers Squibb Co., 699 F.3d 563, 572 (1st Cir. 2012) (deeming plaintiff's undeveloped argument as waived).

Finally, plaintiff offers no evidence of damages resulting from her loss of a company vehicle.  Only the complaint references plaintiff's alleged damages for her breach of contract claim: she estimates the damages to be "well in excess of $1 million." (Docket 1 at p. 22.)  Plaintiff claims that as a result of all of defendants' alleged actions, she has experienced "considerable stress," "significant physical and mental damage," sadness, frustration, humiliation, as well as "depression, anxiety, insomnia, crying spells, inability to concentrate, headaches, neck and back pain, muscular spasms, stomach upset and digestive track interference, irritability, weakness, equilibrium distress, stress,

nerve implications, tachycardia, blurred and dry vision, a sense of
burning on her leg and itching on her hands and arm." (Docket 1 at
p. 18.)  The Court simply cannot believe that the loss of her
company car privilege has caused any of the alleged suffering
listed above.  "Judges are not fools required to believe what
ordinary citizens do not accept," Carrasquillo v. Aponte Roque, 682
F. Supp. 137, 141 n.1 (D.P.R. 1988) (Fuste, J.), and in this case
the Court is entirely unpersuaded that plaintiff's loss of the
privilege to drive a company vehicle caused damages sufficient to
support a breach of contract claim.  Accordingly, plaintiff has
failed to satisfy the third element of a breach of contract claim
for the loss of her company car privilege, and that claim is
**DISMISSED WITH PREJUDICE.**

## VII. Conclusion

Plaintiff fails to present sufficient evidence to establish
issues of material fact to rebut defendants' motion for summary
judgment.  For the reasons stated above, defendants' motion for
summary judgment is **GRANTED.**  Plaintiff's ADEA age discrimination
claim, Title VII sex and national origin discrimination claims,
Title VII retaliation claim, Law 100 claims, Law 115 claims,
article 1802 claims, and breach of contract claims are **DISMISSED
WITH PREJUDICE.**  This case is **DISMISSED WITH PREJUDICE IN ITS
ENTIRETY.**

**Judgment shall be entered accordingly.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 13, 2013.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE